Scott, J.
The first question raised by the assignments of error in this case is : Did the court below err in overruling the demurrer to the plaintiff’s petition ? This demurrer, it is said, should have Been sustained for several reasons.
1. It is claimed that the action should have been brought by Howe, the plaintiff in attachment, and could not be maintained in the name of his assignees. The right of action against a garnishee, .given by section 218 of the code, was intended as a means of procuring satisfaction of the attaching creditor’s claim. It is incidental to, and inseparable from, the ownership of such claim, and by the assignment of the claim, passes to the assignee. The general rule of the code, established by section 25, is that “ every action must bo prosecuted in the name of the real party in interest,” and and the only exceptions to that rule are to be found in section 27, and none of them relates to the case of assignments. But section 26 provides that “ in the case of an assignment of a thing in action. 143] *the action by the assignee shall be without prejudice,” etccloarly implying that the action is to be brought by the assignee. Where at common law, an assignment of a chose in action would jpass only the equitable title, it is the policy of the code to vest in *144 ■the assignee the legal title, and consequent right of action in his own name.
2. It is claimed, in the next place, that the action should have been brought against the firm by its firm name, and not against the members of the firm by their individual names. This position is 'wholly untenable. The remedy provided by the statute which authorizes suits to be brought by and against jDartners in their firm name is not a substitute for the remedies previously existing, but is in addition thereto. This is expressly declared in its fifth section. S. & C. Stat. 1139. It follows that partnership liabilities may be enforced by action brought under this statute, and pursuant to its provisions, or by suit against the partners by their individual names, as before the statute, at the option of the plaintiff.
3. Again, it is claimed that the demurrer to the petition should have been sustained because no lien could be acquired, nor liability toe imposed on the firm by process of garnishment issued against a firm by the firm name; the claim being that a firm as such can not be garnisheed. The same point was made upon the trial by instructions asked to be given in charge to the jury and refused by the court; and it presents a question which is, perhaps, not free from doubt.
Section 200 of the code provides that: “When the plaintiff, his agent, or attorney shall make oath in writing that he has good neason to, and does believe that any person or corporation, in said affidavit named, has property of the defendant in his possession (describing the same), if the officer can not get possession of such property, he shall leave with such garnishee a copy of the order of attachment, with a written notice that he appear in court and answer,” etc. The literal terms of this section embrace only the case of a single person or a corporation. But its provisions are remedial, and should be liberally construed; certainly not with such strictness as would defeat its evident purpose. Properly construed, it must be held to authorize proceedings against any number of persons, who, as an unincorporated company or [144 association, have the property of the defendant in attachment in their joint possession. The only question of doubt is, whether in .such case process must issue against the partners by their individual -names, or may, at the option of the plaintiff, issue against the .company or association by the firm name which it may have assumed for business purposes.
*145 By the act of February 27, 1846, “ in aid of the law regulating" suits by and against companies and partners,” which has already been referred to, unincorporated companies or partnerships formed for the purpose of carrying on any trade or business within this state, are authorized “ to sue or be sued ” in any of the courts of this state, by such usual or ordinary name as such company, partnership, or association may have assumed to itself or be known by; and-in such case the statute declares it shall not be necessary to set forth in the process or pleadings, or to prove at the- trial, file-names of the persons composing such company. The purpose of this statute was to give to every partnership of the kind which it' describes, a status in court as a person, an artificial or ideal person,, it is true, but still the status of a person, who is regarded as the-owner of the partnership property and rights in action, and is responsible for the partnership debts and liabilities of every kind. To render the administration of justice more convenient and easy,, this statute authorizes suits to be brought by and against this ideal person in the name which the partners have seen fit to give it, and authorizes judgments which may be rendered against it to be satisfied by executions to be levied only on the partnership property. This capacity of appearing in court, in the firm name, is conferred by the statute upon partnerships in general terms; they “may sue and be sued” in this manner; not in special cases, or classes of cases, but, without qualification or limitation, they may thus sue and be sued generally. Now, what is it “ to sue,” or “ be sued,” within the meaning of this statute? These terms comprehend much more than the inauguration and prosecution of the civil action provided for by the code. It is sufficient for the purposes of the present case to say that a party may, at least, be said 145] to be sued, #when, by proper legal process, he has been brought into court to answer to a claim preferred against him by another, upon the validity of which the court has jurisdiction topase judicially to render a valid judgment, and enforce the same-by writ of execution.
Now, by the provisions of the code, when the plaintiff in attachment, upon proper affidavits, procures the issuing and service of garnish ee process, the garnishee becomes bound to appear, and answer fully and truly touching any property of the defendant in - attachment in his possession or under his control, and touching his own indebtedness to such defendant, and to submit to such special *146 .examination as the court may direct; and this obligation to make ■a full disclosure may be enforced by attachment. If he answer fully and truly, and comply with the order of the court, made in ■the premises, he is entitled to recover his costs. If, by his answer, he admit an indebtedness to the defendant in the principal action, ■the court may order the payment of the whole or a part thereof to :the plaintiff; and upon this order, if not complied with, an execution may issue, as upon judgments for the payment of money. •Code, sec. 200. In addition to all this, is the remedy given by section 218, under which the original action in this case was brought. Looking, therefore, to the nature and results of proceedings in garnishment, we think they exhibit the characteristic elements of a .■suit; that a garnishee, when duly served with a copy of the order of attachment, and notice to appear and answer, may properly be said to “ be sued,” within the meaning of the act of 1846, and that ■process of garnishment may therefore well issue, and proceedings ..thereon be conducted against a partnership under its firm name.
Another question, closely connected with the one we have been examining, was raised in the court below, as well by the pleadings as by instructions asked to be given in charge to the jury. The plaintiffs in error asked the court to charge the jury that service of the order of attachment, and notice to the garnishee made upon the firm by leaving copies thereof at the usual place of business of .the firm, with the person in ^charge of the office, would be [146 wholly invalid, and that this irregularity and defect in the mode of service would not be waived or cured by an appearance and answer, on behalf of the firm, by one of its members. The -court charged as requested in regard to the defective character of .such a service, but instructed the. jury that if one of the defendants, with the attorney of Whitman, Standart & Co., appeared and made answer before the referee, in pursuance of the notice, such .appearance and answer would cure the defects of the service, and that the defendants were bound by such appearance. Did the court err in refusing to charge as requested? Section 201 of the code -directs that: “ The copy of the order and the notice shall be served upon the garnishee, as follows: If he be a person, they shall be served upon him personally, or left at his usual place of residence; if a corporation, they shall be left with the president or other head -of the same, or the secretary, cashier, or managing agent thereof.” This mode of service is substantially the same as had been pre *147 scribed in preceding sections, in the case of a summons, but as the’ antecedent provisions were limited to the service of a summons, this-section providing for special process was necessary and proper. But neither in'this section nor in any other part of the code, do we find any mode prescribed for the service of a summons, or any other mesne process upon a firm when sued in the manner authorized by" the act of 1846. That act, however, and all its provisions, remain unrepealed and in full force, and are the only authority for judicial proceedings by or against a partnership in the firm name. The* second section of that act directs “ that process against any such company or firm, under the provisions of this act, shall be served by copy left at their usual place of doing business within the county.” Here, then, in the same statute which gave the new and cumulative-remedy, we find prescribed the mode, and the only mode, of serving' a summons, or such other “ process ” as the particular case may require, whenever a party would avail himself of the remedy here-given. We think the court below was-mistaken in charging the jury that the service of garnishee prohess by a copy of the order and notice left at the partnership office or place of business would’ 147] *be irregular and invalid; but as this instruction was given-at the request of plaintiffs in error, and could not prejudice them, it. can furnish no ground of complaint on their part.
Whether an irregularity in the mode of service would have been' waived or cured by a subsequent appearance and answer, as was held by the court below; and whether, without special authority, one of the partners could bind the firm by a voluntary appearance and answer, it is, of course, unnecessary to inquire.
The power of the court to appoint a commissioner to reduce to writing the special examination of the garnishee, and. report the same to the court, is also drawn in question by counsel. We think: the court might well make such order. The only limitation on the-power of the court in that regard is found in section 200, which provides in favor of garnishees not resident in the county in which the order of attachment issues, that: “ Any special examination of such garnishee, which may be ordered by the court shall be in the-county in which he may reside.” This provision is not indicative of a purpose to require the special examination of the garnishee to-be had in open court, in any case.
It' is also claimed that the court erred in refusing to charge the-jury, at the request of plaintiffs in error that, independent of any *148 arrangement between Cornwall and the banking firm of defendants, sncb as was set up in their answer, the firm would have a banker’s lien upon the proceeds of the Byers draft, for any balance of account in their favor against Cornwall. No issue of this kind has-been made by the pleadings. The defendants below had claimed by their answer that this draft had been left for collection on the account of "Whitman, and that he was entitled to its proceeds in virtue of an agreement with Cornwall to that effect. The court below was of the opinion that the claim of the plaintiffs below could not be defeated by a lien wholly inconsistent with that set up in the answer; or, in other words, that the proofs must substantially correspond with the pleadings; and in this we think that court was entirely correct.
On the trial below the plaintiffs in error offered to prove by the testimony of Needham W. Standart certain statements *or [148 admissions made by Cornwall, to the effect that he had, in the fall of 1854, made an arrangement with Whitman, and his partners, such as is stated in their answer. To the introduction of this evidence the plaintiffs below objected, and the court sustained the objection and excluded the evidence. It is alleged that the court erred in this ruling. It may be conceded that the evidence offered would have been competent, irrespective of the circumstances of the case, for the purpose of proving that such an arrangement had been made by the parties thereto as was proposed to be shown. Still, its exclusion would not justify the reversal of the judgment, if it appear satisfactorily, that the plaintiffs in error could not have been prejudiced thereby. The fact that such an arrangement had been made between Cornwall and Whitman in the fall of 1854. was not controverted by the plaintiffs below-, either by their pleadings or by evidence offered on the trial. Their claim was that this arrangement terminated when Cornwall quit the Lake Superior trade, which was before August, 1856 when the Byers draft was left for collection, and that it was not therefore, deposited with the bank under and pursuant to the former agreement. Each of the defendants below was permitted, without objection, to testify directly to the making of the original agreement between Cornwall and Whitman; they were allowed to state, and did fully state its terms, the time when it was made, and the reasons which gave rise to it. Even the witness, through whom the excluded evidence was offered, had already testified that Cornwall was authorized to *149 draw checks on the firm, under an arrangement made by Whitman with the firm;” he had testified fully to the terms of this arrangement; “that Whitman was to have the benefit of any money or paper deposited with said firm by said Cornwall;” that this was in pursuance of an arrangement between Whitman and Cornwall, the terms of which he knew by hearing them talk about it arid say what it was, in 1854 or 1855. Whitman had testified very fully both as to the existence and terms of the arrangement between Cornwall and himself, as well as of that between himself and the 149] firm; and no evidence of a contradictory character *was offered from any quarter. We think it evident that the defense below failed, not for want of proof that the arrangement claimed to have been made in 1854, was in fact then made, but from a failure to satisfy the jury that it still subsisted in August, 1856, and that the draft was deposited in pursuance thereof. This was what the plaintiffs’ reply had denied. As the evidence excluded was at most only cumulative, and upon a point evidently not controverted, and as plaintiffs in error had the benefit of what was substantially the same evidence from the same witness, wo think they could not have been prejudiced by the ruling complained of. This doctrine is fully .sanctioned by the case of Gandolfo v. The State, 11 Ohio St. 114.
Finally, it is claimed that the court efrod in overruling the motion for a new trial, on the ground that the verdict was against the weight of evidence. The main question to be passed on by the jury was whether the Byers draft had been left with defendants below, by Cornwall, for collection on the account of Whitman, or •on his own account. There were admitted facts, as well as direct testimony, tending to impeach the evidence of the defendants on that subject. They had, contrary to their usual custom, made two entries of the Byers draft on their bank register. The first of these entries originally showed that the collection was to be made on Cornwall’s account. From this entry, the name of Cornwall had been erased and that of Whitman substituted. Why or when the • duplicate entry was made was not clearly shown. The plaintiffs below testified that the alteration in the first entry had not been made when the register was first exhibited on the special examination of Charles W. Standart; whilst the defendants testified otherwise. In this irreconcilable conflict of evidence, it was for the jury to determine all questions of credibility; and if they found these against the defendants, then it was their province, in the light of *150 tbe evidence and under proper instructions, to determine whether ■the alteration was made for the honest purpose of correcting a mistake, or for the fraudulent purpose of giving color to a false claim. XJpon this question, the finding of the jury may have been contrary to the fact, but we think it was not so clearly unwarranted *by [150 the evidence as to require a third, verdict of the same kind to be set .aside.

Judgment affirmed.

Day, C. J., and Brinkerhoff, Welch, and White, JJ., concurred.